E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3756
     Facsimile: (213) 894-0141
     E-mail:   alexandra.michael@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:23-cr-00429-JFW-6 |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT CARLOS LUIZ ARELLANO |
| v. | |
| CARLOS CORONA, et al., | |
| Defendants. | |

     1.   This constitutes the plea agreement between CARLOS LUIZ
ARELLANO ("defendant") and the United States Attorney's Office for
the Central District of California (the "USAO") in the above-
captioned case.  This agreement is limited to the USAO and cannot
bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to/that:

          a.   At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to count one of the

indictment in <u>United States v. CARLOS CORONA, et al.,</u> No. 2:23-cr-00429-JFW-6, which charges defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

1

<u>NATURE OF THE OFFENSE</u>

2   4.   Defendant understands that for defendant to be guilty of

3   the crime charged in count one, that is, Conspiracy to Commit Bank

4   Fraud, in violation of Title 18, United States Code, Section 1349,

5   the following must be true:

6        a.   First, beginning no later than October 14, 2020, and

7   continuing through at least August 18, 2023, there was an agreement

8   between two or more persons to commit Bank Fraud, in violation of

9   Title 18, United States Code, Section 1344(1);

10        b.   Second, defendant became a member of the conspiracy

11   knowing of at least one of its objects and intending to help

12   accomplish it; and

13        c.   Third, one of the members of the conspiracy performed

14   at least one overt act for the purpose of carrying out the

15   conspiracy.

16   5.   Defendant understands that for an individual to be guilty

17   of Bank Fraud, in violation of Title 18, United States Code, Section

18   1344(1), the following must be true:

19        a.   First, the individual knowingly executed or attempted

20   to execute a scheme to defraud a financial institution of something

21   of value;

22        b.   Second, that the statements made as part of the scheme

23   were material; that is, they had a natural tendency to influence, or

24   were capable of influencing, a person to part with money or property;

25        c.   Third, the individual did so with the intent to

26   defraud the financial institution; and

27        d.   Fourth, the financial institution was insured by the

28   Federal Deposit Insurance Corporation.

A "scheme to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat, in other words to deprive the victim of money or property by means of deception.  It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud.  It is also not necessary for the government to prove that the individual was actually successful in defrauding any financial institution.  Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud.

An "intent to defraud" means to act willfully and with the specific intent to deceive and cheat.

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $178,847, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a

professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

a.   Beginning no later than October 14, 2020, and continuing through at least August 18, 2023, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant conspired and agreed with co-defendants CARLOS CORONA, JOSE LUIS EDEZA JR., JOHN WESLEY BESS JR., RICARDO OCHOA JR., SAULO SOLARES, SOFIA GENESIS ALVAREZ, KAREN VANESSA MARTINEZ, VANESSA CORTES ARZATE, and RICARDO WILFREDO NICHOLSON (collectively, the "CO-CONSPIRATORS"), to knowingly and intentionally commit bank fraud. Specifically, defendant and the CO-CONSPIRATORS agreed to knowingly execute a scheme to fraudulently obtain money owned by Bank of America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A. ("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"), Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union ("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst") (collectively, the "Financial Institutions"), through materially false and fraudulent pretenses, representations, and promises. Defendant joined this conspiracy knowing of this object and intending to help accomplish it.

b.   At all times during the conspiracy, BOA, Citi, WFB, Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC").

c.   In furtherance of the conspiracy, co-defendant SOLARES and others stole checks from the U.S. mail, including from mailboxes and post office mail collection boxes located outside of U.S. Post Office locations.  Co-defendants CORONA, EDEZA, BESS, and OCHOA, and

other co-conspirators, would then take possession of the checks that co-defendant SOLARES and others stole.

d.   In furtherance of the conspiracy, defendant and co-defendants CORONA, EDEZA, BESS, OCHOA, ALVAREZ, MARTINEZ, CORTES ARZATE, and NICHOLSON, and other co-conspirators, solicited bank account holders through social media to provide their debit cards and bank account information to defendant and his co-conspirators.  In return, defendant and his co-conspirators promised these account holders a cut of any fraudulent funds deposited into their accounts. To circumvent the fraud protections of the Financial Institutions, defendant and his co-conspirators specifically requested bank accounts that had been open for a certain amount of time so that co-conspirators could get access to the stolen funds more quickly.  Once bank account holders responded to the advertisements via social media and provided the information requested in the advertisements, including bank account numbers, PIN numbers, and online banking log-in information, defendant and co-defendants CORONA, EDEZA, BESS, OCHOA, ALVAREZ, MARTINEZ, CORTES ARZATE, and NICHOLSON also took physical possession of the account holders' debit cards.  Defendant and his co-conspirators then exchanged the debit cards and bank account information obtained from the bank account holders with each other.

e.   In furtherance of the conspiracy, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, deposited the stolen checks into the bank accounts that had been sourced by defendant and other co-conspirators.  In most cases, the stolen checks were falsely endorsed in the original payee's name.  In doing so, the co-conspirators falsely represented that they were the payees

on the checks and were entitled to the funds and concealed that they were not the payees on the stolen checks and that they were not authorized to deposit the checks or receive the payees' funds.  In some cases, the checks were washed or altered to make the payee the name of the owner of the bank account into which the checks were being deposited.

f.    In furtherance of the conspiracy, after the stolen checks were deposited into the bank accounts described above, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

g.    Throughout the course of the conspiracy, to conceal the fraud, defendant and his co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

h.    Also in furtherance of the conspiracy, defendant and his co-conspirators committed at least the following acts:

i.    On July 8, 2021, defendant posted an Instagram story depicting a WFB ATM receipt dated July 8, 2021, which documented a check deposit of $44,348.70, and invited followers to message defendant if they were interested in having a similar amount of money deposited into their bank accounts.

ii.    On July 19, 2021, defendant posted an Instagram story stating that he was "picking cards up today" and inviting followers with accounts at BOA, Chase, WFB, and "all other banks" to direct message defendant if they were interested in making quick

1  money.

2         iii. On January 28, 2021, in Instagram direct

3  messages, defendant sent co-defendant BESS three PIN numbers for

4  debit cards that defendant had delivered to co-defendant BESS and

5  indicated that the PIN number for the fourth debit card was written

6  on the card.

7         iv.  On January 31, 2021, in response to defendant's

8  Instagram direct message asking if Citi or Capital One accounts

9  worked in the scheme, co-defendant BESS said that Citi accounts

10  worked, but he wasn't sure about Capital One accounts.

11         v.  On June 18, 2021, co-defendant ALVAREZ asked

12  defendant if he would deposit checks into bank accounts that co-

13  defendant ALVAREZ had recruited.

14         vi.  On July 28, 2021, in response to an undercover

15  law enforcement officer's (the "UC") Instagram direct message that

16  the UC was interested, defendant explained that a "friend would

17  deposit a check with funds" into the UC's bank account and the UC

18  would receive one-third of what was deposited and that the bank might

19  close the UC's account after the checks were deposited.

20  Accountholder R.B. (WFB Account 8769)

21         vii. On February 10, 2021, co-defendant BESS deposited

22  check no. 40146 from J.P.T., Inc. payable to N.C.C.B., Inc. in the

23  amount of $31,143.75 into WFB Account 8769 using WFB Card 7041 at an

24  ATM in Gardena, California.

25         viii.   On February 11, 2021, co-defendant BESS

26  withdrew $2,500 in cash from WFB Account 8769 at an ATM in

27  Westchester, California.

28         ix.  On February 11, 2021, co-defendant BESS withdrew

$800 in cash from WFB Account 8769 at an ATM in Westchester, California.

x. On February 11, 2021, in response to defendant's Instagram direct message asking if co-defendant BESS was "cashing out," co-defendant BESS told defendant that he had gotten $3,300 out of WFB Account 8769 and sent a photograph of a portion of the ATM receipt documenting the withdrawal in front of a stack of $100 and $20 bills.

Accountholder H.M. (BOA Account 4387)

xi. On or before April 9, 2021, defendant delivered BOA Card 2003 to co-defendant OCHOA.

xii. On April 9, 2021, using Instagram direct messages, defendant sent co-defendant OCHOA the six-digit PIN number for BOA Card 2003.

xiii. On April 15, 2021, co-defendant OCHOA caused check no. 239 from J.R.C. payable to K.C. in the amount of $4,200 to be deposited into BOA Account 4387 using BOA Card 2003 at an ATM in Gardena, California.

xiv. On April 15, 2021, using Instagram direct messages, co-defendant OCHOA sent a photograph to defendant depicting a BOA ATM receipt documenting the deposit and the back of BOA Card 2003 with a six-digit PIN number handwritten on it.

Accountholder D.V. (WFB Account 4722)

xv. On or before April 19, 2021, defendant delivered WFB Card 4881 to co-defendant OCHOA.

xvi. On April 19, 2021, defendant sent co-defendant OCHOA the four-digit PIN number for WFB Card 4881.

xvii.    On April 19, 2021, co-defendant OCHOA caused check no. 114 from V.B. payable to the United States Treasury in the amount of $58,000 to be deposited into WFB Account 4722 using WFB Card 4881 at an ATM in Gardena, California.

xviii.   On April 19, 2021, using Instagram direct messages, co-defendant OCHOA sent defendant a photograph depicting an ATM receipt documenting the deposit.

xix. On April 20, 2021, co-defendant OCHOA sent defendant an Instagram direct message that the check deposit was on hold until April 28, 2021.

xx.   On April 28, 2021, co-defendant OCHOA withdrew $300 in cash from WFB Account 4722 at an ATM in Torrance, California.

xxi. On April 29, 2021, using Instagram direct messages, co-defendant OCHOA sent defendant a photograph depicting the back of WFB Card 4881, which had the same PIN number handwritten on the back, and a partially obscured ATM withdrawal receipt documenting the cash withdrawal.

i.    Defendant admits that by engaging in the conduct and acts described above: (1) he knowingly executed and participated in a scheme to defraud the Financial Institutions of money; and (2) he did so with the intent to defraud the Financial Institutions.  Defendant also admits that by engaging in the conduct and acts described above, his co-conspirators unlawfully obtained money from the Financial Institutions through false and fraudulent pretenses, statements, and representations, which had the natural tendency to influence the Financial Institutions to part with money.

j.    Defendant admits that over the course of the conspiracy, he: (1) attempted and intended to cause a loss of at

least $716,800.64 to several of the Financial Institutions; and (2)
caused an actual loss of $178,847 to Wells Fargo.

SENTENCING FACTORS

12.   Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

13.   Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| More than $550,000 of Loss | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |

Defendant and the USAO reserve the right to argue that additional
specific offense characteristics, adjustments, and departures under
the Sentencing Guidelines are appropriate.

14.   Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

1

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

2      16.   Defendant understands that by pleading guilty, defendant

3 gives up the following rights:

4           a.    The right to persist in a plea of not guilty.

5           b.    The right to a speedy and public trial by jury.

6           c.    The right to be represented by counsel -- and if

7 necessary have the Court appoint counsel -- at trial.  Defendant

8 understands, however, that, defendant retains the right to be

9 represented by counsel -- and if necessary have the Court appoint

10 counsel -- at every other stage of the proceeding.

11          d.    The right to be presumed innocent and to have the

12 burden of proof placed on the government to prove defendant guilty

13 beyond a reasonable doubt.

14          e.    The right to confront and cross-examine witnesses

15 against defendant.

16          f.    The right to testify and to present evidence in

17 opposition to the charges, including the right to compel the

18 attendance of witnesses to testify.

19          g.    The right not to be compelled to testify, and, if

20 defendant chose not to testify or present evidence, to have that

21 choice not be used against defendant.

22          h.    Any and all rights to pursue any affirmative defenses,

23 Fourth Amendment or Fifth Amendment claims, and other pretrial

24 motions that have been filed or could be filed.

25               <u>WAIVER OF APPEAL OF CONVICTION</u>

26      17.   Defendant understands that, with the exception of an appeal

27 based on a claim that defendant's guilty plea was involuntary, by

28 pleading guilty defendant is waiving and giving up any right to

appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $178,847; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the

16

range corresponding to an offense level of 20 and the criminal history category calculated by the Court.  The USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $178,847.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

///

///

### RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

21.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

29.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____          Date 4/10/24
ALEXANDRA MICHAEL
Assistant United States Attorney

_____          Date 4/10/24
CARLOS LUIZ ARELLANO
Defendant

_____          Date 4-16-24
ERNEST LUTZ
Attorney for Defendant CARLOS LUIZ
ARELLANO

///

///

///

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand

21

the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____                     4/10/2024
CARLOS LUIZ ARELLANO                                  _____
Defendant                                             Date


/// 

/// 

/// 


                      CERTIFICATION OF DEFENDANT'S ATTORNEY

     I am CARLOS LUIZ ARELLANO's attorney.  I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors

set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          4-10-24
ERNEST LUTZ                               _____
Attorney for Defendant CARLOS LUIZ        Date
ARELLANO

23